BOARD OF EDUCATION OF TONICA COMMUNITY HIGH SCHOOL DIS-
TRICT NO. 360, La SALLE COUNTY *et al.*, Plaintiffs-Appellees, v.
ADELBERT E. SICKLEY *et al.*, Defendants-Appellants.

Third District   No. 3—84—0347

Opinion filed June 12, 1985.

Cynthia M. Raccuglia, of Anthony C. Raccuglia & Associates, of Peru,
for appellants.

Stanley B. Eisenhammer and Bennet Rodick, both of Robbins, Schwartz,
Nicholas, Lifton & Taylor, of Chicago, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Adelbert E. Sickley, a school counselor, has appealed from an order of the circuit court of La Salle County which reversed an administrative decision of a hearing officer of the Illinois State Board of Education as against the manifest weight of the evidence. The hearing officer had ruled that the Tonica boards of education had not proved good cause for discharging Adelbert Sickley as a tenured teacher and that Sickley would not be dismissed. We reverse the circuit court and affirm the administrative decision of the hearing officer.

Sickley, age 58, had been employed by the boards of education of the Tonica high school and grade school districts as a guidance counselor for both the elementary and secondary schools, and by the Lostant High School, in the same capacity, from 1970 to 1981. (Lostant's board of education is not a party to this proceeding.) From 1964 to 1970, Sickley had taught in the Tonica schools. In October of 1981, a 10-year-old fifth-grade girl, Audrey Urbanc, was referred to him because she was failing all of her subjects except one and her parents had not responded to deficiency notices. By Sickley's own account, he met with Audrey in his office on October 4, December 4, 10 and 11, and again on January 7, 1982. Sickley saw a need to motivate Audrey to complete her homework each day, and after determining that she was not receiving much attention from her busy parents, he tried to show his personal concern for her progress. He permitted her to sit on his knee while they talked; he hugged her, and when she threw her arms around his neck and cried, he stroked her back, arms and legs. On one occasion she complained of a lump on her hip, and Sickley felt the lump and discovered that it was not tender. Although at one time Sickley stated that he had placed his hand inside the girl's slacks to feel the bump, at the hearing he testified that he felt the lump through her clothing. Audrey testified that he felt her hip both inside and outside her pants. Sickley admitted on the witness stand that he became emotionally involved in Audrey's problem, more as a parent than a counselor, which he later regretted, and he denied that he had any sexual contact with her.

About 1½ weeks after Sickley's last conference with Audrey, she told her parents about her relationship with the counselor and her parents apparently contacted the police. Sickley was charged with the offense of indecent liberties with a child, and he was immediately suspended from his job in the schools. On January 18, 1982, he gave the superintendent of the Tonica schools a written statement describing his relationship with Audrey, in which he admitted that he had violated one of the cardinal rules of counseling in that he had become emotionally

involved with a student. Sickley later submitted to a lie detector test, and at the conclusion of the test, he was repeatedly urged to explain what happened to the boards in order to get his job back. He finally wrote out a letter of apology dictated to him by the polygraph examiner. That letter was the subject of an order of suppression in the criminal cause brought against Sickley, and the suppression, on the grounds that it was involuntary, was affirmed on appeal by this court in *People v. Sickley* (1983), 114 Ill. App. 3d 167, 448 N.E.2d 612. The hearing officer found that the letter of apology was not credible under the circumstances.

At the hearing, Audrey testified that Sickley put his hands under her shirt and touched her chest and that he put his hand on her hip inside and outside her pants. The hearing officer stated that he "was not impressed with the credibility of Audrey," and he obviously gave her testimony little weight. On the other hand, the hearing officer stated that he was impressed by Sickley's testimony and with his sincerity. Audrey's parents were not called to testify.

A number of teachers and former students of Sickley testified that he had an excellent reputation for honesty and integrity, and the superintendent of schools for the Lostant school favorably testified at length concerning Sickley's conduct as a counselor. He stated that he encourages faculty members to relate to students on a personal basis, for example, with a pat on the shoulder, and he expressed approval of a personal relationship between a counselor and student.

The superintendent of the Tonica schools, on the other hand, testified that Sickley's conduct was not proper and created an unhealthy dependence between student and counselor. An expert in the field of school counseling testified that physical encounters with students, such as sitting on the counselor's lap, touching the student's leg and back, tickling, and becoming emotionally involved are not professionally accepted counseling practices. Both the expert and the Tonica administrator stated that a counselor should refer suspected child abuse to the proper authorities rather than to put his hand inside the pants of the child to examine a bump on her hip. The Tonica superintendent opined that putting hands inside a child's pants will cause the student to experience "irremedial mental anguish."

The boards of education asserted the following charges as grounds for Sickley's dismissal:

"1. You have acted immorally in that you took indecent liberties with a student under your charge, by lewdly touching and fondling the student.

2. You have acted unprofessionally in that you used highly

improper counseling techniques to the detriment of the students under your charge.

3.  You have acted in a manner which is not in the best interest of the School District in that your immoral and unprofessional conduct has resulted in irreparable loss of confidence in your future ability to perform your duties as a teacher and counselor."

The hearing officer prepared an 18-page opinion containing his findings and decision. After an exhaustive discussion of the evidence, he concluded that the boards failed to sustain each charge by a preponderance of the evidence. On appeal, we are asked to affirm the hearing officer's decision and to reverse the administrative review order of the circuit court which found that decision to have been contrary to the manifest weight of the evidence. The circuit court did not file a memorandum opinion or statement of reasons.

■ Section 3—110 of the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—110) provides that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. It is well settled that the circuit court is authorized to set aside such findings only if they are against the manifest weight of the evidence. (*Rolando v. School Directors* (1976), 44 Ill. App. 3d 658, 358 N.E.2d 945.) Furthermore, the duty of the appellate court is the same as that of the circuit court, and we must examine the entire record to ascertain whether the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Derringer v. Civil Service Com.* (1978), 66 Ill. App. 3d 239, 383 N.E.2d 771.) As the court noted in *Derringer v. Civil Service Com.*:

"[W]e do not reweigh the evidence as we would if we were the original decision-maker, attempting to decide in the first instance whether the party with the burden of proof has proved the material elements of his case by the preponderance of the evidence. Our weighing is done on different scales; our function is merely to decide whether the manifest weight of the evidence of record favors the party who did not prevail before the agency. If it does not, we must affirm, even if we think that the preponderance of the evidence is to the contrary. But if, after a review of all the evidence, we think it evident that the administrative decision was wrong, it is our duty to reverse." 66 Ill. App. 3d 239, 241, 383 N.E.2d 771, 773.

■ ■ This is a case where credibility of the witnesses weighs very heavily. The record on appeal includes a transcript of the interviews of

Sickley by the polygraph operator before and after a polygraph test on February 5, 1982. Sickley's statements during the pretest interview are in basic agreement with a written statement he prepared for his superintendent on January 18, 1982, and with his testimony before the hearing officer. At all times, Sickley denied any sexual contact with the child. The most damaging evidence against Sickley was the testimony of Audrey, which the hearing officer found not believable, and certain admissions by Sickley during the post-test interview which this court has previously found were "induced through misrepresentation, duress, improper influence and psychological brainwashing." (*People v. Sickley* (1983), 114 Ill. App. 3d 167, 172, 448 N.E.2d 612.) Thus, the only evidence indicating that Sickley placed his hands inside Audrey's clothing or touched her bare thigh was suspect and given little if any weight by the trier of fact.

We cannot ignore the fact that numerous persons testified without contradiction to Sickley's excellent life-long reputation for truthfulness, honesty and integrity, while several witnesses testified, also without contradiction, that Audrey was known "to tell stories."

What is clear from Sickley's own statements and testimony is that he formed an affectionate relationship with a child who seemed to need attention and encouragement. The witnesses did not agree as to the wisdom of hugging, stroking, and tickling as a method of school counseling. However, the question before the hearing officer was not whether the counselor's course of conduct was wise, but whether it was immoral and unprofessional to the detriment of the students and contrary to the best interest of the school district. He found that the boards did not sustain those charges, and having reviewed the record, we certainly cannot say that the manifest weight of the evidence was to the contrary.

Nothing in the record indicates that it is or should be considered immoral to hug or stroke a crying, distraught 10-year-old child or to tickle an unduly sad one. Nothing in the record indicates that it is immoral to permit a 10-year-old child to sit on a man's knee while they discuss her school work and her family situation. Both the first and third charges of the board require a finding of immoral conduct, and those charges simply were not proved. The second charge requires a finding that Sickley used "highly improper counseling techniques to the detriment of the students under [his] charge." The propriety of the counseling techniques used by Sickley was a matter of dispute among the educators who testified. Regardless, the second charge was not proved, because there was no evidence of any detriment to students as a result of his counseling techniques. There is nothing to indicate that

any students, except Audrey, perhaps, have suffered any harm or detriment; rather, several former students and the Lostant school superintendent praised Sickley's counseling techniques. The only evidence concerning the effect of Sickley's conduct upon Audrey is that of the Tonica superintendent of schools, who states as a general conclusion that such conduct will cause irremedial mental anguish for the students involved. The same witness testified that he determined that Sickley's conduct was irremedial on February 17, 1982, when he submitted a dismissal resolution to the boards, and that the teachers had not reported any physical or emotional problems with Audrey at that time. We do not agree with the boards' argument that the districts are held in disrepute by the mere fact that charges of immoral conduct have been filed against Sickley. A tenured teacher is certainly as much entitled to a presumption of innocence as is anyone else against whom criminal charges have been filed. Unsupported charges are not sufficient to justify dismissal of a teacher on the ground that the reputation of the school district has been damaged. We repeat, we cannot say that the hearing officer's finding that the boards failed to prove the second charge was contrary to the manifest weight of the evidence. The evidence supporting the charge was meagre at best.

▪ The boards also urge us to consider the fact that the hearing officer restricted their cross-examination of Sickley as an error supporting the trial court's reversal of the administrative decision. We have examined the rulings in question, and we conclude that the rulings were within the discretion of the hearing officer and were not an abuse of that discretion. In any event, any error would have been harmless. The attorney for the school boards sought to question Sickley about possible discrepancies between his hearing testimony and the January 18, 1982, statement he had given the Tonica schools superintendent. The discrepancies were minor, the hearing officer heard his testimony and the document was before the hearing officer for his consideration. The ruling on evidence could not have affected the outcome of the hearing.

We conclude, therefore, that the circuit court of La Salle County erred in reversing the decision of the hearing officer. Accordingly, we reverse the judgment of the circuit court, affirm the decision of the hearing officer, and hold that the boards of education for the Tonica schools did not have good cause for dismissing Sickley in 1982.

Reversed.

SCOTT and STOUDER, JJ., concur.