THE BOARD OF EDUCATION OF ARGO-SUMMIT SCHOOL DISTRICT NO. 104, COOK COUNTY, Appellee, v. THE STATE BOARD OF EDUCATION, Defendant (William H. Hunt, Appellant).

First District (1st Division) No. 84—2419

Opinion filed November 25, 1985.

Cornfield & Feldman, of Chicago (Gail E. Mrozowski, of counsel), for appellant.

Scariano, Kula & Ellch, Chartered, of Chicago (Anthony G. Scariano and John M. Izzo, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, William H. Hunt, was a tenured elementary physical education teacher in Argo-Summit School District No. 104, Cook County, when he was discharged by the board of education of that district (the board) pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—12) for unprofessional and immoral conduct. Following an evidentiary hearing before an administrative hearing officer, Hunt was ordered to be reinstated with full back pay and other benefits. The board then sought administrative review before the circuit court of Cook County. The circuit court reversed the reinstatement order and affirmed the dismissal. Hunt appeals. For the following reasons, we affirm the judgment of the circuit court.

At the time of his dismissal, Hunt had been teaching physical education at Walsh School in School District No. 104 for approximately 17 years. On November 14, 1983, Mr. James Wrenn, district superintendent and Mrs. Azalee Elder, principal of Walsh School, met with Hunt to inform him that allegations of unprofessional and immoral

conduct had been made against him by three second-grade female students. Specifically, the students alleged that defendant had pinched them on the buttocks during physical education class.

On November 22, 1983, at a regularly scheduled meeting, the board voted to immediately dismiss Hunt from his duties as a teacher in the school district. The board's resolution cited the following notice of charges:

"1. That on various occasions during the 1983-84 school year, namely from beginning of the 1983-84 school year up to and including Monday, November 14, 1983, you did either pinch, touch or fondle, certain female second grade students in your P.E. Class (J.P., M.L. and E.K.) in the anal area.

2. That on Monday, November 14, 1983, you did, as further unprofessional and immoral conduct, again ask a second grade student, M.L., to come 'closer to me.' When the child refused to do so because of just having reported the earlier incidents of improper and immoral fondling and touching to her parents, and having been warned to stay away from you, you did grab the child on the shoulders and pull her to you forcefully at which time you again fondled, pinched and touched her in the anal area."

On a prehearing motion by Hunt, the board subsequently issued a more detailed bill of particulars. However, the substance of the charges remained as stated in the aforementioned original notice.

On May 21 and 22, 1984, the hearing on the board's charges was held before a hearing officer of the Illinois State Board of Education. At the hearing, the three students and their mothers testified as to the events leading up to the charges. Both M.L. and E.K. testified that Hunt would physically pull them to within a few inches of him whenever they had something to say to him during gym class on the premise that he could not hear what they were saying. While they were talking to him, he would pinch the girls on the buttocks. This had happened several times to each of the girls. J.P. testified that when she had forgotten her gym shoes one day, Hunt called her over to him and while talking to her, pinched her on the buttocks. At the hearing, Hunt admitted that he had pinched each of the girls on the buttocks, but denied that he had done so in an effort to obtain sexual gratification.

Following further testimony by two expert child psychiatrists, several teaching associates of Hunt, and Hunt himself, the hearing officer found that: (1) the testimony of the students was "competent and credible;" and (2) the undisputed acts of pinching the buttocks of

the students were improper. However, the hearing officer found that there was insufficient evidence to show that Hunt's conduct was intended to be sexually provocative and, thus, ruled that Hunt's conduct was remediable and necessitated a warning prior to dismissal.

Subsequently, the board filed its complaint with the circuit court for administrative review, alleging that the hearing officer's decision to reinstate Hunt was contrary to and not in accordance with the law, and was unsupported by the evidence. The circuit court held that Hunt's conduct was irremediable, reversed the hearing officer's decision, and directed that an order of discharge be entered. In reaching its decision, the circuit court noted that the hearing officer had found the students' testimony to be competent and credible, and that it was undisputed that Hunt had pinched the buttocks of the three girls. The circuit court then concluded that such intolerable and impermissible conduct could not, under any circumstances, be considered remediable. Hunt's timely appeal followed.

The sole issue on appeal is whether the cause for defendant's discharge was remediable or irremediable. If the cause was remediable, defendant would have been entitled to a warning pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—12). Because compliance with the procedures set forth in section 24—12 is jurisdictional, if a warning is not given with respect to a remediable cause, the board lacks jurisdiction to dismiss the teacher. *Welch v. Board of Education* (1977), 45 Ill. App. 3d 35, 37-38, 358 N.E.2d 1364.

■ The two-prong test for remediability (the remediability test) as set forth by the Illinois Supreme Court in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, is as follows:

> "The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned [him]."

The test has been applied to a variety of fact situations in which the complained-of conduct has concerned either deficiencies in teaching performance (see, *e.g., Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 388 N.E.2d 398; *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 367 N.E.2d 1337; *Morris v. Board of Education* (1981), 96 Ill. App. 3d 405, 421 N.E.2d 387; *Board of Education v. State Board of Education* (1980), 82 Ill. App. 3d 820, 403 N.E.2d 277) or corporal punishment. (See, *e.g., Board of Education v. State Board of Education* (1983), 99 Ill. 2d 111, 457 N.E.2d 435; *Gilliland v. Board of Edu-*

*cation* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.) However, we have found no Illinois cases which have applied the remediability test to a fact situation in which the complained-of conduct concerns alleged immoral acts between a teacher and student.

Instead, Illinois cases in which alleged immoral conduct between teacher and student has been the ground for dismissal have addressed the issue of manifest weight of the evidence and have not considered the question of irremediability. (*Board of Education v. Sickley* (1985), 133 Ill. App. 3d 921, 479 N.E.2d 1142; *Lombardo v. Board of Education* (1968), 100 Ill. App. 2d 108, 241 N.E.2d 495.) In *Sickley*, the reviewing court reversed the circuit court's reversal of the hearing officer's decision, finding that the evidence did not support the board's charges. In *Lombardo*, the reviewing court upheld the circuit court's administrative review order to dismiss the teacher on the ground that the order was supported by the evidence and the law. Neither *Sickley* nor *Lombardo* addressed the question as to whether the alleged immoral conduct was remediable or irremediable. Thus, we find that they are distinguishable from the case at bar.

The first prong of the remediability test is whether damage has been done to the students, faculty or school. With respect to the students, it is clear that Hunt's conduct is not the type that would have left physical scars. Instead, our inquiry must be whether the conduct has had or is likely to have a negative psychological effect on the students. In this regard, the mothers of the three children testified as to the immediate effects Hunt's conduct had on the children. J.P.'s mother stated that her daughter withdrew from her father for several weeks after the incident. M.L.'s mother stated that M.L. broke out into hives and became extremely nervous and agitated when she tried to discuss the incident. E.K.'s mother stated that E.K. told her that Hunt had been placing his hand on her buttocks for two years, but she had not told her mother because she thought that Hunt's conduct must be right because he was a teacher. E.K.'s mother further stated that E.K. had been inducing vomiting lately in an effort to stay home from school.

Dr. Marvin Schwarz, child psychiatrist testifying on behalf of the board, stated that behavior such as that exhibited by defendant has a highly traumatic effect on young girls, "especially when the male involved is an individual in the position of community responsibility or authority such as a teacher." Dr. Schwarz further stated that the effects are manifested in a variety of ways such as shying away from male family members as well as from gym class, and refusing to wear a dress.

Dr. Judith Stoewe, child and adolescent psychiatrist, testified that she had been hired by the board to evaluate the three children and their mothers. In her opinion, it is difficult, if not impossible, to predict the future effect Hunt's conduct would have on the three children. Initially, each child reacted to the situation in a different manner and the long-term effects of the conduct on each child's growth, development and sexual integration could be anywhere from no effect to a very severe effect which could be immediate or prolonged into the teenage or adult years. Dr. Stoewe further stated that, in her opinion, Hunt's behavior was outside the behavioral norms of an adult-child relationship.

Upon review of the record, we find that there is sufficient evidence to indicate that Hunt's conduct had immediate adverse psychological effects on the three children. With respect to damage to the faculty and school, it is our view that conduct such as that exhibited by Hunt is not only inherently harmful to the individual teacher-student relationship, but is equally harmful to the reputation of the faculty and the school district. (See *Denton v. South Kitsap School District No. 402* (1973), 10 Wash. App. 69, 516 P.2d 1080.) In reaching this decision, we take cognizance of the fact that teachers occupy a special position of trust in our society. As leaders and role models, it is the teacher's responsibility to instill basic societal values and qualities of good citizenship in the students. We concur with the trial court that it is inconceivable that a situation would arise in which immoral conduct of any type between a teacher and student could be excused by reprimand. The breach of trust caused by such conduct violates the public trust not only in the teacher, but in the entire faculty and school system associated with the teacher. (See *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 430 N.E.2d 310.) Accordingly, we find that the first prong of the remediability test has been satisfied.

The second prong of the remediability test is whether the conduct resulting in the damage could have been corrected had the defendant's superiors warned him. It can always be argued that if Hunt had been told not to pinch the buttocks of his students, he would have refrained from doing so. In fact, this argument could be made regarding any alleged improper conduct and be virtually incapable of defense until the promise is later broken. If it took only a promise never to engage in the improper conduct again, it is clear that it would be very difficult, if not impossible, to satisfy the second prong of the remediability test. We do not believe this was the intent of the Illinois Supreme Court when it enunciated the remediability test in *Gilliland v.*

*Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.

In *Gilliland*, plaintiff was dismissed by the board of education for incompetency, cruelty, negligence and the best interests of the school. The circuit court affirmed the dismissal; the appellate court reversed and the supreme court reversed the appellate court and affirmed the dismissal. In applying its facts to the two-prong remediability test, the *Gilliland* court found that the record contained considerable evidence of damage to the students in satisfaction of the first prong. With respect to the second prong, there is minimal discussion except reference to the fact that plaintiff's complained-of conduct had extended over a period of four years, despite complaints by students and parents. The *Gilliland* court concluded that the combination of causes "plus the continuous nature of the conduct were a sufficient basis for a finding of irremediability." (67 Ill. 2d 143, 154.) Apparently, in fact situations involving teaching deficiencies and corporal punishment, the nature of the conduct with respect to both type and duration form a basis for a determination of the second prong and warrant a finding of irremediability.

▮▮ In our view, a fact situation which involves alleged immoral conduct between a teacher and student is distinguishable from that which concerns teaching deficiencies or corporal punishment. In the latter, the teacher's conduct had at least some basis in legitimate school policy concerning teaching techniques or punishment. By contrast, a situation involving alleged immoral conduct such as that exhibited by Hunt has no legitimate basis in school policy. As stated by the trial court, "[I]t is not socially or morally acceptable for a gym teacher in a *** school system *** to pinch seven and eight year old girls on the buttocks. *** I know of no circumstances under which that conduct would be tolerated." Consequently, in our view, the more appropriate focus in cases alleging immoral conduct is not whether the conduct itself could have been corrected by a warning, but whether the effects of the conduct could have been corrected. In this regard, we are not persuaded that a warning could correct the psychological damage to the students or the damage to the reputation of the faculty and school district that was precipitated by Hunt's immoral conduct. (See *Potter v. Kalama Public School District, No. 402* (1982), 31 Wash. App. 838, 644 P.2d 1229.) Moreover, even if we were to look at whether the conduct could have been corrected by a warning, our decision would be the same. There is unrefuted expert testimony that the type of conduct engaged in by Hunt has a high degree of recurrence. In our opinion, the possibility of the recurrence of such impermissible and intolerable behavior should be avoided. Accordingly,

we conclude that the second prong of the remediability test has been satisfied and that the cause for Hunt's dismissal is irremediable. The trial court's decision is affirmed, and Hunt is to be discharged in accordance with the ruling of the board.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.