(No. 87-CC-0878-)

JOSEPH DOE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 2, 1994.*

RUTHANNE K. DEWOLFE, of Legal Assistance Foundation, for Claimant.

ROLAND W. BURRIS, Attorney General (JOHN A. SIMON and TANYA SOLOV, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

MITCHELL, J.

This matter comes before the Court of Claims as a negligence action against the State of Illinois and Illinois Department of Corrections (IDOC).

Claimant alleges that while incarcerated at IDOC Youth Center in St. Charles the IDOC negligently failed to protect him from sexual assault by another inmate. Claimant contends that the negligence of the IDOC was the proximate cause of the Claimant's sexual assault and that Claimant suffered $75,000 in damages.

### Facts

On August 23, 1985, Claimant was convicted of armed robbery and sentenced to six years imprisonment. On August 29, 1985, Claimant arrived at the reception and classification unit of the IDOC Youth Center in St. Charles.

Upon arrival, Claimant was immediately examined by Dr. Baker, an IDOC psychiatrist at St. Charles. Dr. Baker reviewed the Claimant's psychiatric history, which spanned seven years and included hospitalizations on at least five occasions, and extensive outpatient psychotherapy. At the conclusion of the examination, Dr. Baker made a diagnosis of childhood schizophrenia and continued Claimant on the psychotropic drug, Prolixin. Dr. Baker recommended that Claimant receive a permanent assignment in a special intensive treatment program.

While Claimant waited for an opening in the special treatment program, he was housed in Robinson cottage at the reception and classification unit, where he had a series of roommates.

On September 14, 1985, James Roe was assigned as Claimant's roommate. Roe was a fourteen year-old delinquent who was committed to the IDOC for the offense of aggravated battery. The two youths shared the room without incident for two weeks.

On September 29, 1985, Claimant retired to his room about 9:00 p.m. At approximately 10:00 p.m. Roe returned to the room. Claimant testified that he and Roe had an argument and that Roe threatened Claimant. Claimant testified that he banged on his cell door and begged Lowell Edwards, the youth supervisor, to let Claimant see the team leader and requested to be transferred to Roosevelt cottage. Claimant testified that he persisted in his requests but that the supervisor ignored him.

Claimant first reported the alleged incident to another inmate by stating that James Roe had attempted to rape Claimant, but that Claimant had avoided the attack.

Approximately 10 days after the alleged incident, Claimant recounted the alleged attack to three employees and an IDOC investigation was instituted. Claimant reported that while he slept, James Roe stuffed a sock down Claimant's throat, tied Claimant's hands and forcibly raped him.

In another version of the incident, Claimant told polygraph examiner Michael Musto that Claimant had engaged in a consensual sex act with Roe in exchange for cigarettes.

At trial, Claimant testified that Roe ordered Claimant to blow on Roe's arm or leg and to suck on his penis. He further testified that Roe then pushed Claimant down on the bed, forced himself on top of Claimant and sodomized him.

At trial, Lowell Edwards, the unit supervisor on duty on September 29, 1985, testified that nothing unusual happened that night. He stated that no requests were made by any youths to see their team leaders or to go to Roosevelt cottage and that no youth reported a sexual assault. Claimant was housed at the St. Charles Robinson cottage until October 15, 1985, when he was transferred to a special treatment program in Setlen House. Claimant's psychiatric condition worsened. He was depressed and paranoid and reported hearing voices telling him to kill two other juvenile residents who were pressuring him for sex.

On November 14, 1985, Claimant was transferred to the Illinois State Psychiatric Institute ("ISPI") because his doctors felt that his condition warranted immediate attention. After four months at ISPI, Claimant returned to IDOC and the balance of his stay was uneventful.

Claimant brings this action against the State of Illinois alleging negligence by the State employees at St. Charles Youth Center. When a claimant alleges injury was caused by defendant's negligence and a third party's illegal wrongful act, the claimant must prove by a preponderance of the evidence that the third party committed the illegal or wrongful act. (*Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 284 N.E.2d 934, 943.) Claimant has failed to establish by a preponderance of the evidence that he was, in fact, sexually assaulted. Claimant first reported the alleged attack to a fellow inmate by stating that the attacker had attempted to rape Claimant but that he had

avoided the attack. Approximately 10 days after the incident, Claimant reported the alleged attack to three IDOC employees. Claimant reported that while Claimant slept the offender stuffed a sock down Claimant's throat, tied his hands with a sock and then forcibly raped him. Claimant later recanted that version of the facts.

In Claimant's statement to IDOC employees he also claimed that after the attack he screamed, kicked and pounded on his room door. In his deposition testimony, Claimant stated that he did not scream or kick on his door. At trial Claimant testified that he did pound on his room door after the incident. The unit supervisor on duty that evening testified that nothing unusual occurred on the night of the alleged incident.

In yet another contradictory version, Claimant also interviewed with IDOC polygraph examiner Michael Musto. Following the lie detector test Claimant voluntarily told Musto that he had engaged in a consensual sex act with the alleged offender in exchange for cigarettes. Statements made by a person after being administered a lie detector test are admissible evidence. *People v. Sickley* (1983), 114 Ill. App. 3d 167, 448 N.E.2d 612.

Further, Claimant's trial account of the alleged facts is at best improbable. The prison records indicate that at the time of his admission to IDOC in August of 1985, Claimant was five feet, six inches tall and weighed 150 pounds and would turn 17 years old in September, 1985. Prison records also indicate that in September, 1985 the alleged offender was five feet, four inches tall, weighed 140 pounds and was 14 years of age. Yet Claimant testified that the alleged offender overpowered him, and held Claimant down with one hand while the alleged offender used the other hand to apply hair grease to his penis.

Dr. James Guidi, a licensed clinical psychologist, testified on behalf of Claimant. Dr. Guidi testified that Claimant's admitted prior exaggeration of the amount of force used, i.e., that he was tied down and a sock was stuffed down his throat, and the delay in reporting the attack to the staff are typical of victims of sexual assault. However, the repeated inconsistencies in Claimant's testimony and the physical improbability of the Claimant's most current version raises a significant doubt as to whether the alleged incident of sexual assault ever occurred.

In light of the inconsistencies, Claimant's testimony cannot be considered credible. Claimant has, therefore, failed to prove the third party's wrongful act by a preponderance of the evidence and the Court need go no further. Therefore, the claim is denied.

## AMENDMENT TO OPINION

MITCHELL, J.

For purposes of publication of this opinion, the Claimant's name shall be changed to Joseph Doe and his roommate's name shall be changed to James Roe.