**UNITED STATES of America**

v.

**Cecil B. JACOBSON, Defendant.**

**Cr. No. 91–00474–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 9, 1992.

Randy I. Bellows, David G. Barger, U.S. Atty.'s Office, Alexandria, Va., for plaintiff.

David R. Axelson, James R. Tate, Tate & Bywater, Vienna, Va., for defendant.

## MEMORANDUM OPINION

**CACHERIS, Chief Judge.**

The primary issue before the court is whether or not the courtroom should be closed to the public and the press during the testimony of eleven witnesses in a criminal proceeding. The Government's Motion for Protective Order seeks, *inter alia,* to close the courtroom during the testimony of eleven witnesses who are the parents of children allegedly fathered by the Defendant when he allegedly inseminated the female witnesses with his own sperm. For reasons set forth below, the motion is granted in part and denied in part.

### I

### *Background*

Dr. Cecil B. Jacobson was indicted on fifty-three counts of mail fraud, wire fraud, travel fraud and perjury. In the indictment, the Government alleges that Dr. Jacobson defrauded certain women and their husbands by representing that the women would be inseminated with sperm from an anonymous donor participating in a donor insemination program. The Government further alleges that, contrary to these representations, Dr. Jacobson inseminated these women with his own sperm, thereby becoming the biological father of the children born to certain of his patients.

In its motion, the Government represents that it intends to call eleven of these parents as witnesses at trial. The Government asks the court to exercise its inherent authority and its purported authority under 18 U.S.C. § 3509 to impose five separate limitations on the pretrial and trial proceedings with respect to these witnesses: (1) to close the courtroom to the public and the press during the witnesses' trial testimony; (2) to allow the witnesses to testify under

pseudonyms; (3) to permit the filing under seal of pleadings containing information identifying the witnesses, with redacted copies to be placed in the public record; (4) to subject the parties to certain nondisclosure obligations concerning identifying information which they obtain in the course of the litigation or which they already know; and (5) to redact identifying information from any exhibits or other documents filed with the court.

### II

### *Notice*

■■■ Before considering a motion for protective order seeking closure of the courtroom or the sealing of documents in a criminal proceeding, there must be adequate notice to the public that such measures will be considered by the court. *In re Washington Post Co.,* 807 F.2d 383, 390 (4th Cir.1986) (citation omitted). In particular, closure motions and motions to seal documents must be docketed reasonably in advance of their disposition so as to give the public and the press an opportunity to intervene and present their objections to the court. *Id.* The Government filed its motion on December 9, 1991 and argument was set for December 20, 1991.[1] The court finds that adequate notice was given in this matter and it may therefore properly consider the Government's Motion for Protective Order.

### III

### *The Court's Authority to Issue the Protective Order*

#### A.  18 U.S.C. § 3509

■■■ The Government's first argument for a protective order is based on the special child protection provisions found in 18 U.S.C. § 3509[2] entitled "Child victims' and

---

1. *The Washington Post* intervened in this action for the purpose of presenting its objections to the court on December 19, 1991.

2. Section 3509 provides in pertinent part:
   (A) On motion by any person the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of

the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child. (B) A protective order issued under subparagraph (A) may—
   (i) provide that the testimony of a child witness, and the testimony of any other witness, when the attorney who calls the witness has reason to anticipate that the name of or

child witnesses' rights." This statute applies only to a "child" as defined by the statute. The definition provides that:

[T]he term "child" means a person who is under the age of 18, who is or is alleged to be—

(A) a victim of a crime of physical abuse, sexual abuse, or exploitation; or

(B) *a witness to a crime committed against another person.*

18 U.S.C. § 3509(a)(2) (emphasis added). The Government argues that the children allegedly fathered by Dr. Jacobson should be considered "true witnesses" to the alleged crimes committed against their parents because "it is blood drawn from these children which establish the paternity of the defendant." (Gov't's Motion at 8.) Relying on several definitions of "witness" that do not limit the meaning to one who testifies at trial, the Government argues that although the children will not be testifying at trial, they bear "witness" to a crime committed against their parents.

The court finds, however, that 18 U.S.C. § 3509 does not apply in this situation. The statute offers a series of procedural protections to children who must testify in court, including alternatives to live testimony such as closed circuit television. *See, e.g.,* 18 U.S.C. § 3509(b), (c), (e) & (*l*). These provisions provide support for the argument that the primary purpose of this statute is to protect children who must testify in court. In addition, the accepted definition of the term "witness" as used in *legal* proceedings is one who is called to testify before a court. Without further guidance from the legislature or the case law, this court declines to apply a strained interpretation of the term "witness" in order to expand the reach of this relatively new statute.

Even if the court were to find that § 3509 applies to this case, application of the statute would not change the court's constitutional analysis or its ruling on this motion. The statutory provision upon which the Government principally relies is *permissive,* not mandatory. *See* 18 U.S.C. § 3509(d)(3)(A) ("the court *may* issue an order protecting a child from public disclosure....) (emphasis added). Thus, the determination of any privacy protections would be within the court's sound discretion. The court finds that even if it were to apply the statute to this case, it would apply the same constitutional standards it applies under its inherent authority and would reach the same conclusion regarding the subject protective order.

**B. The Court's Inherent Authority under the First Amendment and the Common Law**

■ It is well-settled that the public and the press have a First Amendment right of access to criminal trials. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980); *In re Knight Publishing Co.,* 743 F.2d 231, 233 (4th Cir.1984). The common law also gives the public and the press the right to attend and observe criminal trials. *See United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981).

■ The First Amendment and common law right of access is not absolute, however. This right must be balanced against other compelling interests protected by the Constitution. *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 509–10, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). Nonetheless, there is a strong presumption in favor of openness.

**IV**

*Analysis*

**A. Closure of the Courtroom**

■ The presumption of openness may be overcome only by an overriding interest based on a finding that closure is essential

---

any other information concerning a child may be divulged in the testimony, be taken in a closed courtroom; and

(ii) provide for any other measures that may be necessary to protect the privacy of the child.

18 U.S.C. § 3509(d)(3).

to preserve higher values and is narrowly tailored to serve that interest. *Press–Enterprise Co.*, 464 U.S. at 510, 104 S.Ct. at 824; *accord Globe Newspaper Co.*, 457 U.S. at 607, 102 S.Ct. at 2620 (closure can be sustained only if it "is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest").

▬ The Supreme Court has recognized that the Government has a compelling interest in "safeguarding the physical and psychological well-being of a minor." *Globe Newspaper Co.*, 457 U.S. at 607, 102 S.Ct. at 2620. After reviewing the briefs and affidavits submitted, the court finds that keeping secret the true identity of the parents and their children is necessitated by the compelling and overriding governmental interest in the psychological health and welfare of the children involved in this matter. Significant psychological harm may result from public disclosure of the true identity of the parents who bore children fathered by the Defendant. If such a parent's true identity were disclosed in open court, it is likely that the child of this parent would learn the truth of his or her paternity. In order to safeguard the psychological well-being of these children, information regarding their paternity should be revealed to them in a careful manner controlled and directed by their parents.

▬ The court finds, however, that closure of the courtroom during testimony of the parents is not narrowly tailored to serve the governmental interest. The Government asserts that there are no reasonable alternatives to closure of the courtroom during the parent's testimony because of the risk of inadvertent disclosure of identifying information concerning a parent or his or her children. The court disagrees and finds that the Government has not met its burden of showing that there are no less intrusive alternatives to complete closure of the courtroom during the parents' testimony.

The Government itself has proposed less drastic methods, such as the use of pseudonyms, to prevent disclosure of the identity of the parents or children. The greater protection arguably afforded by ordering complete closure in addition to the other

methods suggested is outweighed by the harm to the First Amendment interests at issue. The Government will simply have to avoid inadvertent disclosure of any witnesses' identity through careful preparation and questioning. As to the Government's concerns that the parents will be targeted for photography by the press, the Office of the United States Marshal for the Eastern District of Virginia can assist the Government in moving the witnesses in and out of the courthouse without their being observed or photographed. Indeed, the Government conceded this in its response to the opposition briefs filed in this case. (Gov't's Reply at 9) ("The Government believes it can get these witnesses in and out of the courthouse without being observed and without being photographed.... [T]he Office of the United States Marshall [sic] can provide valuable assistance in making this possible."). Finally, the chance that one of the parent witnesses will be recognized by someone in the courtroom is simply not a strong or likely enough reason to override the right of access to criminal proceedings.

The court therefore finds that closure of the courtroom during the parent witnesses' testimony is not narrowly tailored to serve the governmental interest and therefore does not withstand constitutional scrutiny. Accordingly, the court denies the Government's request for a protective order requiring the closure of the courtroom during the testimony of the eleven parent witnesses. The court finds that there are less intrusive and more narrowly tailored measures which should be enacted in order to protect the children in this case.

To prevent disclosure of the true identity of the parents and children, the court will issue a protective order which contains protective measures narrowly tailored to serve the governmental interest in preventing psychological harm to the children.

### B. The Use of Pseudonyms

▬ Courts have permitted parties to proceed anonymously by use of pseudonyms where, in balancing the constitutional right of openness against a party's privacy interests, it is determined that pseudonyms are necessary to protect a person from

injury or personal embarrassment. *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1980). The court finds that referring to the parent witnesses by assigned pseudonyms is necessary to protect the children from harm. The use of pseudonyms is a narrowly tailored measure because it shields the identity of the witnesses from the press and the public only. Significantly, the Defendant and his counsel will know the true identity of the parents. Use of the pseudonyms will not interfere with the defendant's preparation for trial, with his ability to cross-examine witnesses at trial, or with the scope of the examination. In other words, his Sixth Amendment right to confront all witnesses will be preserved. Any suggestion that the court, by the use of pseudonyms, is placing a "seal of disapproval" on Defendant's conduct or implying that such conduct was "heinous," (Def.'s Response to Gov't's Motions at 9), can be cured by an appropriate instruction to the jury.

Accordingly, the court will issue a protective order providing that the eleven parent witnesses will be allowed to testify in open court under assigned pseudonyms.

### C. Exclusion of Sketch Artists

█ To further protect the identity of the parents and their children from disclosure to the public and the press, the protective order will also provide that no sketch artist will be allowed in the courtroom during the testimony of the eleven parent witnesses.

### D. Filings Under Seal, Non–Disclosure, and Redactions

█ In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a common law right to inspect and copy judicial records and documents. *See also In re Knight Publishing*, 743 F.2d at 235. This right is not absolute, however. The trial court has supervisory power over its own records and files and may, in its sound discretion, seal documents if the public's right of access is outweighed by competing interests. *Nixon*, 435 U.S. at 598–99, 98 S.Ct. at 1312–13; *In re Knight*, 743 F.2d at 235.

█ The court finds that the governmental interest in protecting the children from psychological harm outweighs the public's right of access to judicial documents that contain identifying information regarding the parents or their children. Balancing the competing interests, the court finds that there are narrowly tailored measures which will adequately protect the governmental interest while preserving the public's common law right of access. First, the court's protective order regarding judicial documents will apply only to documents that contain identifying information regarding the parents or their children. Second, the documents will not be kept completely under seal; a copy from which all identifying information has been redacted shall be placed in the file for access by the public and the press.

Accordingly, the court will issue a protective order with the following provisions concerning judicial documents: (1) all documents filed with the court that contain information identifying patients who bore children as a result of insemination by the Defendant with sperm that was not the husband's, and any identifying information concerning the children shall be filed under seal along with a copy from which the identifying material has been removed. The redacted copy will be placed in the public file; (2) the parties shall redact from exhibits all identifying information concerning patients who bore children as a result of insemination by the Defendant with sperm that was not the husband's, and any identifying information concerning the children. The parties shall provide unredacted copies of the material to each other; (3) the parties shall not disclose to the public or to the press any identifying information received in the course of the litigation or already known to them.

Accordingly, the Government's Motion for Protective Order is denied in part and granted in part.

An appropriate Order shall issue.