JAMES R. HALL, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—3295

Opinion filed March 20, 1992.

Grady, Terrell & Thrall, of Valparaiso, Indiana (Larry E. Thrall, of counsel), for appellant.

Patricia J. Whitten, of Chicago Board of Education, of Chicago (Camille E. Willis, of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

This is an appeal from a final judgment of the circuit court in a suit for administrative review (Ill. Rev. Stat. 1987, ch. 110, par. 3— 101 *et seq.*) affirming the decision of the Illinois State Board of Education ordering plaintiff's dismissal.

Plaintiff raises three issues on appeal: (1) whether the decision of the hearing officer affirming the dismissal of plaintiff was against the manifest weight of the evidence in the record; (2) whether plaintiff was denied due process and a full and fair hearing because of his inability to confront and effectively cross-examine witnesses; and (3) whether the trial court should have remanded the case to the hearing officer for consideration of newly discovered evidence.

Plaintiff began his employment with the board of education of the City of Chicago in 1968 as a full-time substitute teacher under a temporary certificate and subsequently was appointed on a regular certificate as a tenured teacher.

On January 28, 1987, the general superintendent of schools for the Chicago public schools preferred charges of unsatisfactory conduct and requested plaintiff's dismissal as a teacher. By letter dated January 29, 1987, plaintiff was notified of the charges against him and of the request for his dismissal. Plaintiff was also served with a copy of the written charges and specifications of inappropriate and unprofessional physical conduct in March 1985 and in 1986 with a juvenile male student and with one of his juvenile teacher aides. Plaintiff was further advised that the board of education of the City of Chicago had adopted the request for dismissal pursuant to section 34—85 of the School Code of Illinois. Ill. Rev. Stat. 1987, ch. 122, par. 1 *et seq.*

Plaintiff was notified that effective immediately he was suspended without pay pursuant to section 34—85 of the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 34—85) and pursuant to section 4—30 of the rules of the board of education of the City of Chicago. In addition, plaintiff was notified of his right to make a written request for a hearing on the charges within 10 days. Plaintiff requested a hearing on the charges against him.

The Illinois State Board of Education hearing officer conducted an administrative hearing on the charges on December 16 and 17, 1987, on February 5 and 6, 1988, and on March 5, 1988. On June 8,

1988, the hearing officer issued findings of fact and an opinion that plaintiff had engaged in improper sexual activity of a criminal nature with juveniles and students and denied plaintiff's appeal of the board's decision for dismissal.

Plaintiff filed a complaint for administrative review in the circuit court of Cook County. In his final judgment, the circuit court judge affirmed the administrative decision of the Illinois Board of Education hearing officer, specifically finding the decision was "not against the manifest weight of the evidence" and denied plaintiff's request for remand. Plaintiff appealed.

The charges and specifications against plaintiff adopted by the board of education of the City of Chicago on January 28, 1987, and subsequently served on him on February 13, 1987, charged him with "conduct unbecoming a teacher in the Chicago Public School system" during the 1984-85 school year and in 1986. In particular, specifications 1 through 8 charged that during March 1985, plaintiff gave alcohol and marijuana to his male juvenile teaching aide, who consumed the alcohol and smoked the marijuana in plaintiff's presence. Specifications 9 through 18 charged that shortly before April 1, 1985, while at his home, plaintiff and another adult male gave alcohol and marijuana to the juvenile teaching aide and to another male juvenile, who consumed the alcohol and smoked the marijuana, and that plaintiff engaged in sexual activity with the juvenile male and watched while the adult male engaged in sexual activity with plaintiff's juvenile teaching aide. Specification 19 charged plaintiff with "inappropriate sexual interaction" with his juvenile teaching aide in April 1986.

In the administrative proceedings on the charges before hearing officer Harry E. Graham of the Illinois State board of education, the following evidence was adduced.

Plaintiff testified first as an adverse witness for the board of education of the City of Chicago (Board) and later on his own behalf. Plaintiff stated that he had been a teacher since 1968, was certified by the Board in 1975, and had served at 10 or 11 schools. Although plaintiff originally testified that all of his ratings had been "excellent" or "satisfactory," he subsequently stated that he had received one "excellent" rating, many "no ratings," and the remainder were "satisfactory" ratings.

Plaintiff stated that he was assigned to Chicago Vocational School (CVS) from September 1984 to September 1986. He taught five classes per day in United States and modern world history. During that time, he had approximately six student aides, who received "service points" for performing such tasks as scoring papers.

Plaintiff testified that he met D.S. in January 1985, and soon thereafter D.S. asked to become one of plaintiff's aides. D.S.'s duties included scoring papers and preparing lists of students who had unexcused absences from plaintiff's classes.

He stated that D.S. went to plaintiff's home on numerous occasions to score papers or to "do chores" such as cleaning and sorting record albums. D.S. was paid for the chores. Usually plaintiff asked D.S.'s mother for permission to have him come to plaintiff's apartment, although sometimes D.S. told plaintiff that he already had his mother's permission.

Plaintiff testified that on an evening in late February 1985, D.S. came to plaintiff's apartment with L.P., a male juvenile. An adult male friend of plaintiff's, Tony Johnson, was already at the apartment. D.S. came by without plaintiff's permission to score papers. Plaintiff and D.S. graded papers while Johnson and L.P., the male juvenile, watched a movie on plaintiff's television in the bedroom. Plaintiff testified that he could not see the bedroom from the kitchen where he and D.S. worked.

Plaintiff testified that he knew L.P., the male juvenile, and Johnson had previously had sexual relations because Johnson told him so in November 1984, when plaintiff first met L.P. Plaintiff was not aware that L.P. was a minor or that he had been a student at CVS.

Plaintiff testified that while Johnson sometimes smoked marijuana in his apartment, neither of the juveniles, D.S. or L.P., had done so. He also testified that he had never seen D.S. drink an alcoholic beverage in his apartment and that when all four were together, Johnson drank alcoholic beverages but D.S. and L.P. had not. Plaintiff also testified that he never engaged in sexual relations with D.S. or L.P. and never saw Johnson engage in sexual relations with D.S. or L.P.

Plaintiff testified that on several occasions in the spring of 1985 he gave both D.S. and L.P. money for car fare when they stopped by his apartment and asked for it.

Plaintiff also testified that in May 1985, he gave his keys to a student named W.B. to get a typewriter from his automobile. D.S. offered to show the other student where plaintiff's automobile was. Plaintiff was subsequently informed that his automobile had been in an accident and was damaged. Plaintiff testified that he filed a complaint against D.S., but the complaint was not part of the record on appeal. The police reports indicated that both D.S. and the other student, W.B., had driven plaintiff's automobile and caused an accident in the school parking lot. Subsequently, plaintiff told D.S. that D.S.

could no longer be his aide. Plaintiff testified that D.S. became upset and threatened him.

D.S.'s mother testified that her son had been a good student before entering CVS but that his performance had deteriorated since that time. D.S. did not graduate from CVS because he dropped out of school in December 1986. At the time of the hearing, D.S. lived in Detroit, Michigan, and was studying for his GED. D.S.'s mother testified that she did not know why he left CVS. She confirmed that plaintiff had not been her son's teacher.

L.P. testified that he had been at CVS for two semesters but not for the entire 1984-85 school year. L.P. testified that he met plaintiff through D.S. and through another person identified only as "George." On a date which he could not recall but he thought was before Christmas 1985, L.P., D.S. and Johnson were at plaintiff's apartment. L.P. testified that all four "got high" on rum and marijuana, including D.S. and L.P., and plaintiff and Johnson "went down" on D.S. and L.P.

When asked why he did not report the incident, L.P. answered "I never accused James Hall of nothing. I don't know how this come about." However, he testified he did answer questions when police officers came to interview him while he was in the Audy Home. L.P. affirmed that he never accused plaintiff of having sexual relations. L.P. stated that he had never been offered any "deal" for his testimony and that he had not been coerced into testifying. He stated that he had a juvenile charge pending when he was interviewed in the Audy Home, and has since been convicted of criminal sexual assault, his first and only conviction as an adult.

Johnson testified primarily by invoking his fifth amendment right against self-incrimination. Johnson did testify that he met D.S. and L.P. at plaintiff's apartment on a date in April 1985. During that visit, Johnson had sexual relations with D.S. and L.P. and saw plaintiff having sexual relations with D.S. and L.P.

Johnson testified that he subsequently was charged with criminal sexual assault because of that incident, to which he pled guilty. He testified he was not coerced into answering the police officer's questions regarding plaintiff's involvement nor did he receive any promises of leniency. Johnson refused to answer questions regarding his relationship with plaintiff or with L.P. or regarding his use of marijuana.

Officer William O'Neil testified that he was a youth officer who arrested plaintiff and Johnson on a warrant based upon information he and others gathered from the victims and that he had signed the

complaint. He had first interviewed D.S. in June 1986, then interviewed L.P.; both were at the Audy Home at the time of the interviews. O'Neil also interviewed Johnson while he was in custody. O'Neil testified that nothing was offered to L.P., D.S. or Johnson in exchange for their testimony, and that all three made their statements of their own free will.

Officer O'Neil stated that the investigation began with an anonymous letter which had been sent to the principal of CVS, and that he had been "directed" to D.S. both because D.S. had been plaintiff's student aide and because he had been involved with an automobile accident involving plaintiff's vehicle. D.S., the juvenile aide, did not testify.

Several witnesses testified on plaintiff's behalf, including his brother William Spencer Hall, a friend and former student of plaintiff's, Joseph Martin, Arieulas White, the teacher with whom plaintiff shared an office at CVS, Ray Williams, another teacher at CVS, and a more recent student of plaintiff's, Louis Jolicoeur.

William Spencer Hall testified that he frequently visited his brother and often when he did there were students and others in plaintiff's apartment. Hall saw D.S. in the apartment, cleaning and grading papers, and testified that he never saw D.S. smoke marijuana or drink alcoholic beverages. Hall knew of the accident D.S. had with plaintiff's automobile. On cross-examination, Hall testified that while he loves his brother, he loves the truth more and would not lie for his brother.

Martin stated that he had known plaintiff since 1970 and helped plaintiff purchase his VCR. Martin testified that he might recognize D.S. but did not specifically recall him, and that he did not know L.P. He also testified that he never saw anybody smoking marijuana at plaintiff's apartment.

White testified that he had known plaintiff for 1½ to 2 years and thought he was a good teacher. His only basis for this judgment was his 19 years' experience as a teacher, during which he had rated teachers for the Board and on his observations of plaintiff. White testified about an incident which occurred in May or June of 1985, when first plaintiff, then D.S., entered the social studies office. According to White, D.S. clearly "wanted to fight," and plaintiff took him to the hallway.

Williams testified that he knew plaintiff as a colleague and thought plaintiff was a good teacher because Williams had observed him in the classroom. Williams had been to plaintiff's apartment and had seen Johnson there but had not seen any students there. Williams

testified that his opinion of plaintiff had not changed due to the charges because, in his opinion, the charges were not true.

Jolicoeur testified that he had been plaintiff's aide for 1½ years. He also worked cleaning plaintiff's apartment, for which he was paid in cash. This employment ended in approximately January 1986. Jolicoeur testified that he liked plaintiff and that, in general, plaintiff "is a nice human being." Jolicoeur was not certain he would recognize either D.S. or L.P.

Over plaintiff's objection, the Board offered, and the hearing officer permitted, Dr. Howard B. Levy to testify as an expert witness in child sexual abuse. Dr. Levy defined child sexual abuse and described the specific behaviors of victims and offenders. When given a hypothetical situation of facts very similar to those alleged to have occurred in the instant case, Dr. Levy gave his opinion that the youth would be abused, that the teacher had misused his authority, and that the student had been victimized. The addition of other factors, Dr. Levy testified, would only exacerbate the detrimental effects of the underlying actions.

At the end of the testimony, plaintiff's counsel offered into evidence the contract between the Chicago Teacher's Union and the Board. The hearing officer noted that contract had expired in the fall, but plaintiff's counsel pointed out the contract was still in effect until the new one was adopted. Plaintiff's counsel read into the record, without objection, section 34—1 of the contract, which states:

"No anonymous letter or material shall be placed in the teacher's or other bargaining unit member's file or be used in any proceeding or given any credibility anywhere in the Board of Education."

Also admitted into evidence were plaintiff's "Teacher Efficiency Record Card," police reports for a March 23, 1985, "theft" of plaintiff's automobile by one Laurence Stepney, a copy of the relevant sections of title 23 of the Illinois Administrative Code (23 Ill. Adm. Code §52.30 (1986)), a copy of the anonymous letter sent to the principal of CVS, reports of an accident involving plaintiff's automobile in the CVS parking lot on May 9, 1985, listing both D.S. and W.B. as drivers of plaintiff's car, plaintiff's teaching service record, D.S.'s school records, plaintiff's notice of termination from the Dallas Independent School District for administrative reasons, and plaintiff's teaching certificate.

The hearing officer issued his 19-page opinion on June 8, 1988, in which he thoroughly analyzed the evidence and drew certain conclusions. We summarize his opinion as follows.

At the commencement of the hearing on the charges against plaintiff, the parties agreed that the issue in dispute between them was whether or not plaintiff engaged in inappropriate relations with students and juveniles under the age of 16 and whether or not such conduct was irremediable.

In the 1984-85 school year plaintiff was employed by the Chicago School District as a teacher assigned to Chicago Vocational High School and in approximately January 1985, D.S. became his student aide.

D.S.'s first visit to plaintiff's apartment occurred in approximately January 1985. Subsequently in February 1985, D.S. again visited plaintiff's apartment at which time L.P., a juvenile male, and Johnson were also present. All four "got high" on rum and marijuana.

Both plaintiff and Johnson had sexual relations with D.S. and L.P. In spring 1985, perhaps April, the same activities occurred. In spring 1986, a similar incident occurred involving plaintiff and D.S.

Subsequently the CVS administrative office received an anonymous letter which stated that plaintiff was involved in improper sexual activities with students. The letter was forwarded to the police for investigation. Officer O'Neil of the special investigations unit of the youth division investigated, interviewing both D.S. and L.P. Subsequently plaintiff and Johnson were arrested on criminal charges for the sexual activity. Johnson was convicted for his role in this incident. L.P. was subsequently convicted of an unrelated sexual assault.

In January 1987, the Chicago board of education adopted the charge of conduct unbecoming a teacher against plaintiff, and the school district sought his dismissal for sexual misconduct. The hearing officer found that if such activity occurred, dismissal was the proper penalty. The standard of proof is preponderance of the evidence. The Board contends it has met the standard. Plaintiff contends the Board has not met its burden.

While D.S. did not testify before the hearing officer and his whereabouts were unknown, both Johnson and L.P. did testify to the events and improper sexual behavior charged against plaintiff and to their participation in it. The hearing officer found their testimony consistent and credible. He found that L.P. confirmed the version of events described by D.S. in a statement made to the police. L.P. was promised no benefit for his statement, and L.P. did not accuse plaintiff on his own initiative but rather responded to police inquiries. The hearing officer noted that L.P.'s statement had not changed from his first police interview to his testimony before the hearing officer.

Johnson was convicted of sexual assault for his participation in this incident. The hearing officer noted that his testimony was the same as his prior statement to the police.

The hearing officer discredited plaintiff's attempt to argue that D.S. had a motive to lie about these events because of his dispute with plaintiff over D.S.'s alleged theft of plaintiff's car.

The hearing officer found the several character witnesses produced by plaintiff were unaware of the circumstances of this incident, and therefore, the testimony added no useful information to the proceeding. He found the testimony of D.S.'s mother unrealistic and not useful in his consideration of the pending charges.

The hearing officer concluded that "[plaintiff's] conduct [was] criminal in nature. He committed criminal sexual abuse, violated the Illinois Liquor Control Act by giving liquor to persons under 21 years of age and also violated the Cannabis Control Act. As criminal conduct occurred, no warning [was] required and the conduct should be considered to be irremediable. [Plaintiff's] conduct was of such nature as to preclude possibility of remediation." The hearing officer also found that damage had been done to students (D.S.'s academic performance deteriorated, and L.P. was subsequently convicted of sexual assault), and the school and community had been damaged by the notoriety resulting from the incident.

The hearing officer stated that plaintiff contends the charge of "conduct unbecoming a teacher" cannot by itself serve as a basis for discharge, since it must be accompanied by specifications supported by proof sufficient to meet the preponderance standard. Plaintiff denied the charges of improper conduct with D.S., and since D.S. did not testify, plaintiff's denial is undisputed. Plaintiff challenged the credibility of the testimony of Johnson and L.P. and their "hazy recollection" of the specific dates on which these incidents occurred.

Plaintiff contended that charges were brought 18 months after the incidents allegedly occurred. He received no notice of the investigation for the Chicago board of education or of the charges until he was removed from his duties, nor was he given an opportunity to remedy his conduct.

The hearing officer found that this was a credibility controversy and that the conflicting testimony must be viewed based on probabilities. He noted the consistent testimony (unwavering from their statements to the police) from two persons, Johnson and L.P., who were present when the incidents occurred. He found no history of any animosity between plaintiff and either witness and concluded that no motive was shown why they would have wanted to harm plaintiff by

false testimony. The hearing officer found, therefore, that their testimony was credible and unbiased against plaintiff. He stated he gave great weight to the fact of Johnson's conviction for the same event. While not bound by the determination of guilt in the criminal proceedings, the hearing officer stated he considered Johnson's conviction as "yet another strand in the fabric woven against [plaintiff]."

The hearing officer found that because he had a great stake in the outcome, plaintiff's unsupported denial of the events was found suspect when measured against the consistent testimony of Johnson and L.P. to the police and at the hearing. He gave little weight to D.S.'s involvement in the occurrences because D.S. did not testify.

The hearing officer found this proceeding was not brought under the union grievance procedures of the current labor agreement based on a contractual prohibition against placement of anonymous letters of complaint in the personnel file. Because the labor agreement did not prescribe the outcome of the controversy, it was given no weight. The hearing officer found that these occurrences were not a minor flouting of the conventions of society and that plaintiff's behavior was misconduct of an extraordinarily serious nature. He concluded that improper sexual activity of a criminal nature did occur and that its damage to victims, school and community could not be remedied by a warning to plaintiff. The hearing officer made the following determination:

> "Based upon the preceding discussion the conclusion is inescapable that [plaintiff] engaged in inappropriate conduct with students and juveniles and that his conduct is not remediable. Accordingly, his appeal [of the Board's actions] must be denied."

On administrative review, the circuit court judge considered the record, the findings and conclusions of the hearing officer, as well as the briefs and arguments by the Board and by plaintiff. Based upon his review of the above, the circuit court judge entered his final judgment affirming the decision of the Board as follows:

> "The court affirms the decision [of the hearing officer] finding that it is neither against the manifest weight of the evidence nor contrary to the law. It is a very excellent record. It is obvious to the court that the hearing officer in this hearing did his job and I believe he reached the appropriate legal and factual decision."

Plaintiff has appealed the judgment of the circuit court.

Initially we note that the final decision of any administrative agency may be subject to judicial review by the filing of a complaint

and the issuance of summons within prescribed time limits. (Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) The scope of administrative review in the circuit court is as follows:

"The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." Ill. Rev. Stat. 1987, ch. 110, par. 3—110.

On administrative review, the circuit court is limited to a determination of whether the findings and decision of the administrative hearing officer are against the manifest weight of the evidence. (*Wolfe v. Board of Education* (1988), 171 Ill. App. 3d 208, 210, 524 N.E.2d 1177.) Our review of the circuit court judgment on appeal is limited to a determination of whether the trial court correctly determined the propriety of the hearing officer's findings and decision and whether there is evidence in the record to support the conclusion reached by the hearing officer. To make this determination, we must, of necessity, review the record and the hearing officer's findings of fact and the logical inferences he draws from the evidence, as well as the final conclusions in his decision.

First, plaintiff argues that the decision of the hearing officer is against the manifest weight of the evidence because the hearing officer misstated and neglected uncontroverted evidence. More specifically, plaintiff contends the hearing officer misunderstood the charges and specifications and the decision exhibits his confusion as to the evidence adduced.

Plaintiff contends that specifications 1 through 8 and specification 19 involve allegations of sexual activity between only plaintiff and D.S. on two occasions when no other persons were present. Since D.S. did not testify at the hearing, plaintiff's denial of the charges stands uncontroverted. The hearing officer, specifically noting the absence of D.S., stated he gave little weight to D.S.'s statement to the police but found that the credibility of plaintiff's uncontroverted denial of the conduct charged in those specifications was suspect because of his stake in the outcome of the proceedings. We do not find such a conclusion to be contrary to the evidence.

Plaintiff argues that it is clear that the hearing officer misunderstood the charges and specifications when, in reciting the facts pertinent to the hearing, he refers to two separate dates, one in February

1985 and another "in the spring of 1985, perhaps in April," when plaintiff, Johnson, D.S. and L.P. all engaged in sexual activities with each other. Plaintiff contends that specifications 9 through 18 all refer to only one occasion on which sexual activities among those four participants "occurred shortly before April 1, 1985." He contends the decision is fundamentally flawed and is against the manifest weight of the evidence in part because the hearing officer based his conclusions on the belief that there were two incidents rather than one involving these four participants.

Plaintiff argues that the testimony of L.P., one of his prime accusers, and the testimony of Johnson refer to only one occasion when all four were present. He argues that the hearing officer's findings should be set aside where there is no substantial evidence in the record to support them. *Mohler v. Department of Labor* (1951), 409 Ill. 79, 85, 97 N.E.2d 762; *Rolando v. School Directors of District No. 125* (1976), 44 Ill. App. 3d 658, 661, 358 N.E.2d 945.

Plaintiff contends that the inconsistencies in the testimony of Johnson and L.P. as to the date of the occurrence, the room or rooms in which the activities took place, and as to which person interacted with which other person, render the hearing officer's conclusion that both witnesses testified consistently erroneous and contrary to the manifest weight of the evidence when considered as purported proof of the Board's specifications against him. He argues that where the hearing officer's findings regarding witness credibility are based on "facts" shown by the record to be against the manifest weight of the evidence, the credibility findings cannot stand and may be reversed by the reviewing court. *Mohler*, 409 Ill. at 85; *Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 774-75, 501 N.E.2d 983.

Plaintiff does acknowledge that in his testimony he stated that all four people allegedly involved were together in his apartment in February of 1985. He argues he is entitled to the presumption of innocence (*Board of Education of Tonica Community High School District No. 360 v. Sickley* (1985), 133 Ill. App. 3d 921, 926, 479 N.E.2d 1142) and that it was not his burden to prove himself innocent but, rather, it was the Board's burden to prove him guilty of the charges by a preponderance of the evidence (*Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 189, 497 N.E.2d 984). He concludes that because the hearing officer's findings lack evidentiary support in the record, the decision should be set aside and the trial court's judgment affirming the decision should be reversed. *Pioneer Life Insur-*

*ance Co. v. Woodard* (1987), 152 Ill. App. 3d 236, 245, 504 N.E.2d 230.

We note that at the onset of the hearing plaintiff and the Board stipulated that the issue to be determined was whether or not plaintiff engaged in inappropriate relations with students and juveniles and whether or not such conduct was irremediable. The Board contends, therefore, that there was only one charge against plaintiff, specifically, that he was guilty of conduct unbecoming a teacher. The Board contends the trial court was compelled by legislative directive to treat the findings and conclusions of the administrative agency on questions of fact as *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) The court may not substitute its judgment for the judgment of the administrative hearing officer in the exercise of his authority to review the agency's actions unless the findings and judgment are clearly against the weight of the evidence or unless there is no substantial evidence to support them. (*Mohler*, 409 Ill. at 85.) On review it is not the duty of the court to reweigh the evidence; its duty is confined to the very narrow determination of whether the findings and decision are supported by the evidence or whether they are contrary to the manifest weight of the evidence produced at the hearing. *Peterson v. Board of Trustees of the Firemen's Pension Fund* (1973), 54 Ill. 2d 260, 262-63, 296 N.E.2d 721, citing *Cohn v. Smith* (1958), 14 Ill. 2d 388, 395, 153 N.E.2d 83; *Bayer v. Zoning Board of Appeals* (1970), 126 Ill. App. 2d 374, 377, 261 N.E.2d 791.

The Board argues that a finding cannot be adjudged to be against the manifest weight of the evidence and the findings and decision may not be disturbed unless the opposite conclusion is clearly evident from the record (*Rolando*, 44 Ill. App. 3d at 661; *Epstein v. Civil Service Comm'n* (1977), 47 Ill. App. 3d 81, 84, 361 N.E.2d 782; *Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 474, 452 N.E.2d 118), since reversal is not justified merely because an opposite conclusion is reasonable or because the reviewing court might have ruled differently (*Fadler v. State Board of Education* (1987), 153 Ill. App. 3d 1024, 1026, 506 N.E.2d 640). An opposite result must be compelling from the evidence for the reviewing court to reverse the circuit court judge's affirmance of the hearing officer's findings and ultimate decision.

The Board acknowledges it has the burden of producing sufficient proof of the facts charged in the specifications to establish plaintiff's guilt by a preponderance of the evidence (*Board of Education v. State Board of Education*, 113 Ill. 2d at 189; *Board of Education of Minooka Community Consolidated School District No. 201 v. Ingels*

(1979), 75 Ill. App. 3d 334, 337, 394 N.E.2d 69), but argues that the exact language of each specification need not be proven so long as the charges are supported by the preponderance of competent evidence (*Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 410, 438 N.E.2d 147). The Board contends it has produced the preponderance of competent evidence required to prove plaintiff guilty of the improprieties in the specifications and since the hearing officer's conclusions were based on his determination of credibility, his decision must be affirmed. The circuit court judge agreed.

The fact finder has the responsibility to hear the testimony of witnesses, to determine their credibility and the weight to be given to the testimony of each witness and then to draw reasonable inferences from all evidence produced in support of the charges against the accused. The hearing officer acts as fact finder within the authority given him and it is his duty to weigh the evidence and reach his ultimate conclusion based on the entire body of evidence before him. (*Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 181, 148 N.E.2d 584; *Oak Lawn Trust & Savings Bank v. Palos Heights* (1983), 115 Ill. App. 3d 887, 893, 450 N.E.2d 788.) Unless an opposite conclusion is clearly evident (*Doran*, 116 Ill. App. 3d at 474) or unless the conclusion reached is clearly against the manifest weight of the evidence (*Mohler*, 409 Ill. at 85), neither the trial court on judicial review nor this court on appeal will or can substitute our judgment for the findings of the hearing officer.

Hearing officer Harry Graham thoroughly analyzed the evidence. He found eyewitnesses Johnson and L.P. to be credible when they testified as to an occasion where plaintiff, D.S., L.P., and Johnson were together in plaintiff's apartment and explicit sexual activity by both adults with each of the minors occurred. He found them credible when they testified that all four of them smoked marijuana and drank alcohol on that occasion. He found Johnson's testimony credible when he testified he was subsequently charged with criminal sexual assault because of that incident. He found plaintiff's denials of the incident were suspect because of his self-interest in the outcome of the proceedings.

■ The Board contends that the hearing officer's incorrect statement that the proofs established two separate dates on which similar behavior occurred among the same four participants was harmless error. In support of this contention, the Board argues that it was only obligated to prove the stipulated charge of whether plaintiff engaged in inappropriate relations with students and minors and was, therefore, guilty of irremediable conduct unbecoming a teacher regardless

of whether the conduct occurred once or more than once. (*Sutton*, 91 Ill. 2d at 409-10.) The Board contends further that the charges were proven by a preponderance of the evidence where the witness testimony supported the conclusion that the charged conduct occurred on one occasion among the identified participants and where plaintiff, while denying the conduct, acknowledged that those parties were together in his apartment on or about the date specified in the charge. The Board asserts the hearing officer's misstatement that misconduct was proven to have occurred on two separate occasions did not diminish the proof by preponderance of evidence of inappropriate behavior unbecoming a teacher which supports the Board's dismissal of plaintiff.

Plaintiff also contends that the hearing officer improperly disregarded evidence favorable to him and incorrectly found that certain evidence had not been introduced. Specifically he contends the hearing officer found that the labor agreement between the Teacher's Union and the Board was not in evidence when in fact the record discloses that the labor agreement was marked for identification and accepted into evidence without objection as plaintiff's exhibit 9. Plaintiff refers us to the following finding by the hearing officer:

> "[T]he absence of a Labor Agreement on the record serves to vitiate [plaintiff's] argument that the contractual prohibition against placement of anonymous letters or materials in the personnel file or their use in any proceedings should be grounds for setting aside [plaintiff's] dismissal."

Plaintiff argues that an anonymous letter to his high school was forwarded to the police department for investigation and the police investigation then led to interviews with D.S. and L.P., who alleged sexual conduct with plaintiff, who was then arrested; his arrest led to the Board's dismissal action. He argues that the school principal violated the union agreement by forwarding the letter to the police department thereby starting the whole chain of events that led to his dismissal.

He argues that the hearing officer incorrectly found that the labor agreement had not been introduced, and since it was not before him for consideration, the hearing did not occur under the labor agreement but was similar to a just cause discharge grievance. Plaintiff contends that since the hearing officer concluded that the labor agreement was not in evidence he reached the conclusion that the labor agreement does not govern the hearing. Plaintiff argues that this statement is made on the mistaken finding that the labor agreement

was not in evidence and therefore the conclusion is against the manifest weight of the evidence.

Plaintiff argues that a "case can certainly be made" that if the hearing officer had correctly found the labor agreement was of record, he would have had to consider whether the evidence produced was "fruit of the poison tree" and whether the exclusionary doctrine then could be applied to an administrative hearing. Plaintiff argues that this error has seriously affected his rights and has prevented consideration of favorable evidence that properly should have been considered. We find that plaintiff failed to "make" the case he suggests, and we reject this argument.

■■ The Board responds that the labor agreement was not admitted into evidence but rather union exhibit number 9 was only an excerpt from the collective bargaining agreement, article 34, section 34—1. The Board contends that the hearing officer did not disregard this evidence but made a determination that it was irrelevant to the pending charges of conduct unbecoming a teacher. There was no evidence that the anonymous letter was placed in plaintiff's personnel file, but rather the letter was turned over to the police by the school principal for investigation. The Board undertook no direct investigation based on the letter. The Board argues the hearing officer correctly found that the proceeding before him for plaintiff's dismissal did not occur as a grievance procedure under the labor agreement and correctly found that the labor agreement (as differentiated from an excerpt from the agreement) was not in the record and, absent the underlying agreement, plaintiff's contention of error on this basis must fail.

We note that plaintiff cites no authority for his argument that the constitutional principle in criminal cases excluding evidence which is "fruit of the poisoned tree" should be applied to a teacher discharge case. In addition, the Board has argued that because the decision to discharge plaintiff was predicated upon his arrest for the improper conduct charged and was not prompted by the anonymous letter, the exclusionary rule is not applicable in the instant case.

Based upon the record before us, we conclude the hearing officer did not disregard evidence favorable to plaintiff nor was his decision contrary to the preponderance of the evidence.

Plaintiff next contends the hearing officer's conclusion, that "no history of animosity between plaintiff and either of his accusers was shown," improperly placed the burden on plaintiff to prove that Johnson and L.P. had a motive to fabricate their testimony or to conspire to harm plaintiff. Contending that he was entitled to a presumption of

innocence (*Board of Education of Tonica Community High School District No. 360,* 133 Ill. App. 3d at 926), plaintiff has asserted that he did not have a burden to prove a witness' motive to lie and that the Board had the burden to prove the charges and specifications by a preponderance of evidence (*Board of Education v. State Board of Education,* 113 Ill. 2d at 189). Yet, the credibility of the testimony of Johnson and L.P. was not increased or affected by the plaintiff's failure to prove that they had a motive to lie.

Plaintiff argues that the hearing officer's mistaken belief that plaintiff had a burden to show motive of the witnesses to testify falsely resulted in a flawed decision in which the findings of fact are not entitled to the conclusion that they are *prima facie* true, correct and binding. (*Friesel v. Board of Education of Medinah Elementary School District No. 11* (1979), 79 Ill. App. 3d 460, 463-64, 398 N.E.2d 637.) Plaintiff argues for reversal on this basis.

■ The Board contends that the hearing officer's discussion and analysis of the credibility of this testimony includes a consideration of whether either witness would have a motive to lie. He discussed the "high price" each witness paid in testifying against plaintiff, since in so testifying each witness had subjected himself to legal prosecution for his own participation. In keeping with his preamble comment, that this is a credibility controversy which must be viewed based on probabilities, the hearing officer concluded "[i]t is more plausible to believe that they testified as they did because the events to which they testified to [*sic*] actually occurred." The Board contends that it is clear from this language that the hearing officer's analysis merely explored whether or not they were motivated to lie and found the more probable conclusion was that they told the truth even though the truth was damaging to plaintiff, who was their friend. The Board argues that plaintiff did attempt to discredit this testimony by questioning them as to whether they had been offered a promise of favored treatment in their pending criminal cases. The hearing officer believed the witness testimony. We find no shifting of burden of proof to plaintiff and find no error in the conclusions of the hearing officer.

Plaintiff next contends that he was denied due process protection because he was unable to confront and effectively cross-examine his accuser. (*Friesel,* 79 Ill. App. 3d at 464; *Morelli v. Board of Education, Pekin Community High School District No. 303* (1976), 42 Ill. App. 3d 722, 729-30, 356 N.E.2d 438.) More specifically, he asserts that the Board failed to produce D.S., who was alleged to have participated in the inappropriate conduct described in the charges and specifications. Plaintiff contends that testimony by Officer O'Neil of his

initial interview with D.S., which occurred more than a year after the alleged incident and which subsequently led to plaintiff's arrest and dismissal, in a very real sense made D.S. a witness against him. He contends that because D.S. did not testify, he was denied the opportunity to cross-examine this witness. Plaintiff contends also that because the hearing officer restricted the testimony of Johnson to those matters of which he had already been convicted and because Johnson was permitted to exercise his fifth amendment privilege against self-incrimination, plaintiff was effectively denied his right to cross-examine his accuser. He contends it was error for the hearing officer to permit Johnson to refuse to answer questions.

Plaintiff cites as authority for his right to cross-examine the witnesses against him *Morelli v. Board of Education, Pekin Community High School District No. 303* (1976), 42 Ill. App. 3d 722, 730, 356 N.E.2d 438 (crucial to conducting a fair administrative hearing is the ability to cross-examine witnesses), *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (due process requires an opportunity to confront and cross-examine adverse witnesses), and *Lee v. City of Peoria* (7th Cir. 1982), 685 F.2d 196 (under the Administrative Review Law the trial court has the duty to insure that due process and an impartial adjudication were afforded in the administrative hearing).

The Board distinguishes the *Friesel* and *Morelli* cases on which plaintiff relies in support of the proposition that he had a due process right to confront and cross-examine the witness against him. The *Friesel* case dealt with a teacher discharge pursuant to section 24—12, which concerns removal or dismissal of teachers in contractual continued service (Ill. Rev. Stat. 1979, ch. 122, par. 24—12) and in *dicta* discussed the teacher's right to a hearing affording due process protection. The Board contends, however, that section 24—12 dealt only with hearings to which tenured teachers were entitled prior to discharge from contractual continued service.

In *Morelli* the issue before the court was whether the teacher had received a fair hearing where a witness had a prior *ex parte* communication with the hearing body about the same testimony given at the hearing. The Board contends these cases do not apply here since D.S. was not called as a witness and plaintiff had ample opportunity to cross-examine Johnson regarding the issues pertinent to plaintiff's dismissal. The Board contends it had no obligation to produce D.S., that plaintiff could have called him to rebut the Board's evidence and the evidence produced through fellow participants and eyewitnesses

Johnson and L.P. was sufficient to prove the charges of plaintiff's sexual conduct with students and juveniles.

■ Johnson was a reluctant witness against plaintiff but the court order restricting questioning of Johnson so as to protect Johnson's constitutional right against self-incrimination did not inhibit plaintiff from cross-examining him within the customary strictures imposed by his direct testimony. Plaintiff failed to object on this basis at the hearing and the Board contends he should not be allowed to raise the issue for the first time on administrative review as the basis for reversal. (*Bowman v. Pettersen* (1951), 410 Ill. 519, 532, 102 N.E.2d 787.) The Board contends plaintiff's rights were not violated because D.S. was not a witness nor was he inhibited in his cross-examination of Johnson as to the real issues in the case. We agree, and inasmuch as plaintiff failed to make any substantive objections to Johnson's testimony at the hearing, he has waived his right to raise the issue on appeal.

Plaintiff contends that the hearing officer failed to make specific findings of fact as to each charge contrary to the requirements of the statute (23 Ill. Adm. Code §52.80(a)(1986)) and, more specifically, failed to make factual findings as to specifications 1 through 8, specifications 9 through 18, and specification 19. Accordingly, plaintiff argues the record is clearly inadequate to support the conclusions in the hearing officer's decision, and the case should be remanded. (*Board of Education of Minooka Community Consolidated School District No. 201*, 75 Ill. App. 3d at 337; *Sanderson v. De Kalb County Zoning Board of Appeals* (1974), 24 Ill. App. 3d 107, 111-12, 320 N.E.2d 54.) Plaintiff contends that the decision of the hearing officer is contrary to the manifest weight of the evidence, that the trial judge should have reversed his decision and that this court should reverse the trial judge's order affirming the hearing officer's decision.

In the alternative, plaintiff argues that the trial judge should have remanded this matter to the hearing officer for consideration of newly discovered evidence under authority given the trial judge in the Illinois Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—111(a)(7)). The decision of the hearing officer was issued on June 8, 1988. Nine days later, on June 17, plaintiff was acquitted of the criminal sexual charges against him by directed finding following the proofs produced in the State's case in the criminal proceedings arising out of the same alleged acts as resulted in plaintiff's dismissal. He argues that the hearing officer determined Johnson's credibility as a witness to the occurrence of the specific acts of misconduct by giving "great weight to the fact that Johnson has been convicted of criminal

sexual assault" for the same incident by "another independent tribunal." While acknowledging he was not bound by that decision, the hearing officer concluded that tribunal's determination was "another strand in the fabric woven against [plaintiff]." Plaintiff argues that Johnson pled guilty; his conviction, therefore, was not a determination following presentation of the State's evidence but, plaintiff argues, resulted from a plea bargain. Plaintiff contends that because of the rationale of the hearing officer in giving "great weight" to Johnson's conviction, the fact of plaintiff's subsequent acquittal of criminal charges arising from the same incident is extremely material to his decision on the question of his dismissal as a tenured teacher. He argues that the case should be remanded for consideration of the newly discovered evidence.

█ The Board responds that plaintiff's acquittal in the criminal proceedings nine days after the administrative decision was issued is not newly discovered evidence since the criminal charges and the Board's charges against plaintiff are totally separate and distinct charges with different burdens of proof. A teacher dismissal case requires proof by a preponderance of the evidence whereas proof beyond a reasonable doubt is required for conviction of the criminal charges. The elements of the crimes of aggravated criminal sexual assault and aggravated criminal sexual abuse (the criminal charges brought against plaintiff) include considerations of whether force was used, whether the victim was harmed and the age of the victim and are substantially different from the elements involved in a charge of conduct unbecoming a teacher, i.e., here, inappropriate and unprofessional relations and physical conduct with students and juveniles. The Board argues that plaintiff's conviction or acquittal of the criminal charges is not material in the discharge proceedings. We agree and conclude that remand for consideration of plaintiff's acquittal of the criminal charges is not required or appropriate here.

For all of the foregoing reasons, the judgment of the trial judge affirming the decision of the hearing officer and affirming plaintiff's discharge by the board of education of the City of Chicago is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.