**UNITED STATES of America**

v.

**Larry Lane BATEMAN.**

**Crim. No. CR–92–62–01–D.**

United States District Court,
D. New Hampshire.

Oct. 2, 1992.

Arnold H. Huftalen, Asst. U.S. Atty., Jeffrey R. Howard, U.S. Atty., Concord, N.H., Bruce Taylor, Sp. Atty., U.S. Dept. of Justice, Child Exploitation & Obscenity Section Washington, D.C., for U.S.

Mark F. Sullivan, Exeter, N.H., for Larry Lane Bateman.

## OPINION AND ORDER

FUSTE, District Judge, Sitting by Designation.

In this case, the government alleges that defendant Larry Lane Bateman possessed and transported child pornography in violation of Title 18, United States Code, Sections 2252(a)(1) and 2252(a)(4). The defendant has also been charged with a forfeiture count under 18 U.S.C. § 2253.

In the early stages of this proceeding while bail conditions were being decided, the government moved to keep undisclosed the names of two witnesses and to refer to them only by identifying initials, P.C. and J.Y. A United States magistrate originally granted the motion without commentary and without the defendant having had an opportunity to express his views. *See* Motion for Protective Order to Preserve Privacy of Minors and Victims, August 7, 1992, Docket Document No. 7. Today, however, this case is set for trial commencing on October 5, 1992, and issues well beyond the scope of bail conditions must be considered.

At status conferences held in the court's chambers on September 21 and 24, 1992, the defendant orally presented and advocated a motion to reconsider the name concealment order. The defendant argued that he must be afforded the opportunity to confront in a public setting the witnesses against him. The government objected, claiming that the names should be withheld from the public inasmuch as both P.C. and J.Y., now adults, were minors when the defendant allegedly photographed them in the context of this case.

We note that P.C. is the informant who in 1992 complained to the New Hampshire state law enforcement authorities about the defendant's alleged criminal conduct. In contrast, however, J.Y. is an unwilling witness who the government has located and subpoenaed to testify at trial. J.Y.'s involvement in this criminal prosecution is totally different from that of the primary informant, P.C.

During the telephone conference held with counsel on October 1, 1992, the court inquired as to whether the parties agreed on the means of identification of either P.C. or J.Y.—an inquiry first pursued in the status conferences of September 21 and 24, 1992. The parties unequivocally expressed to the court that they are in agreement that J.Y.'s identity should be protected because his involvement is not voluntary. The parties did not agree on the issue of P.C.'s identification. In contrast to J.Y.

and J.Y.'s reticence to testify against the defendant, P.C. was the catalyst for the investigation of the defendant and will voluntarily testify against the defendant.

We now decide to set aside the magistrate's order of August 7, 1992. J.Y.'s identity will be protected as agreed by the parties and the court. P.C.'s name and identity, however, will not be concealed.

## Discussion

■ An important right of any defendant is the right to confront those who testify against him. U.S. Const.Amend. VI. The public nature of confrontation is designed to ensure the veracity of a witness' statements: "face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The identity of a witness is composed of many parts: his name, his position in society, his background, and his relationship with the defendant. While it is within the sound discretion of the court to balance the privacy interests of a witness against the right of a defendant to confront a witness, *United States v. Doe,* 655 F.2d 920, 922 n. 1 (9th Cir.1980), the courts have been reluctant to obscure the identity of a witness. Only a small corner has been carved out of the standard requirement that a defendant's accusers stand against him in full view of the community, and such exception is almost exclusively reserved for children.[1] The courts have historically protected the identity of juvenile defendants. *See* 18 U.S.C. § 5038(e); NH Code § 169–B:37 (1991). More recently, the courts have also begun to extend certain protections to the minor victims of sexual assault. The importance of the defendant's right to confront his accuser, as well as the first

amendment rights of the press, have been found to be less important than the lasting trauma caused to a child by the experience. *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Globe Newspaper Co. v. Superior Court for County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). In both of these contexts, however, it is the characteristics of childhood and the emotional life of the child which are the central concern of the courts and the legislature.

In this case, where the persons for whom identity protection has been requested are currently *adults* who may have been children[2] when pornographically depicted, the situation is quite different. Accepting *arguendo* that J.Y. and P.C. were minors at the relevant times, the government would have us accept the proposition that because one of the purposes of child pornography laws is to protect individuals from the enduring trauma of knowing that pornographic images of them exist, the identity of the children involved should be protected even after those children have become adults. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *United States v. Yeaple,* 605 F.Supp. 85 (M.D.Pa.1985). We do not accept this argument.

■ The reasons for wishing to protect the identity of an adult are much different than the reasons for protecting children; we attribute significantly different psychological characteristics to adults. The law seeks to protect the child against the trauma, isolated or continuing, of premature sexual experience. On the other hand, the motivation for protecting the identity of an adult is generally more objective: protecting the individual from actual physical danger or public censure. In this case, it is clear that the government wishes to ensure as much cooperation as possible by protect-

---

**1.** Courts have protected the identity of adults where their names might be used to identify a minor child. *U.S. v. Jacobson,* 785 F.Supp. 563, 569 (E.D.Va.1992).

**2.** The witnesses in question were *not* statutorily defined as minors at the time when they were involved in the creation of the various porno-

graphic materials found in the defendant's possession. *See generally United States v. Bateman,* 805 F.Supp. 1053 (D.N.H.1992). Their visual depictions on film or photographic paper, however, being frozen in time, are considered to be visual depictions of minors according to the 1984 amendments of the federal child pornography laws. *Id.,* 805 F.Supp. at 1054–56.

ing the witnesses involved from being involuntarily forced to disclose to the community at large their sexual orientations and their involvement in the making of pornographic materials. We have found no cases that persuade us that this is a situation where the identity of the adults involved must be protected.[3] However, this in no way should be interpreted as a green light to make an issue of the sexual orientation of the defendant or of the witnesses. As instructed by the court in status conferences of September 21 and 24, 1992, unnecessary focus on issues of sexual orientation will not be allowed by the court.[4]

"[T]he identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Doe*, 655 F.2d at 922 n. 1. In the civil context, where the importance of confrontation is not as great, the courts have allowed plaintiffs to use fictitious names in certain circumstances, among which are the desire to conceal their sexual orientation. *Doe v. Hallock*, 119 F.R.D. 640 (S.D.Miss.1987); *Coe v. U.S. Dist. Court*, 676 F.2d 411, 414 (10th Cir.1982); *Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir.1979). However, here we are not in a civil context. It is clear that the standards vary greatly from the civil to the criminal context: in the civil context considerations of harassment, reputation and the like are appropriately balanced against the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*,

653 F.2d 180, 186 (5th Cir.1981). However, in the criminal context, where the more carefully guarded rights of the defendant are involved, the standard is much higher, generally that of actual physical danger. *United States v. Doe*, 655 F.2d at 922 n. 1; *see also* 18 U.S.C. § 3521.

There are isolated situations where reputation and the emotional impact of testifying on an adult have been considered by the courts in a criminal context. The situation here, where the names of the witnesses will be linked to homosexual pornographic material, is analogous to the situation of some rape victims, setting aside the issue of the witnesses' non-minority status when the visual depictions were produced. We have found isolated cases where the identity of the rape victim, analogous in some respects to a minor depicted in a sexually explicit film, is excluded from the record; however, this appears to depend upon the sensational nature of the case and is within the discretion of the court. *See Wood v. Alaska*, 957 F.2d 1544 (9th Cir. 1992). We note that rape victims historically have not been protected from the public nature of their testimony. Any protection of their identity in the press was strictly as a result of an unspoken agreement on the part of the press. Only recently has the issue of the appropriateness of introducing evidence concerning a victim's sexual past become important. And even there it has not been the identity of the victim which is protected, but certain details concerning his or her past behavior which are considered by definition to be

---

**3.** We found two recent cases where courts have chosen to continue to withhold the names of children who over the course of time became adults. *State v. Lopez*, 170 Ariz. 112, 822 P.2d 465 (1991); *Hall v. Board of Education*, 227 Ill.App.3d 560, 169 Ill.Dec. 758, 592 N.E.2d 245 (1992). In both of these cases the individuals involved appear to have been *children at the time the case was commenced*. We note that both of those cases involved boys who were the *victims* of homosexual *sexual assault*. Whether the courts were motivated to conceal the identity of the individuals involved because of the homosexual or minority aspect of the crime is unclear from the opinions.

**4.** "Many of the bars involved in this case catered primarily, or at least frequently, to homosexual

persons. Some of the witnesses shared that persuasion. Both before and during trial, the court expressed a desire not to becloud the charges by trying the case 'in a homosexual sense.' After warning defense counsel away from the topic during opening statements, the judge consistently blocked questions aimed at bringing the matter of sexual orientation to the forefront. Given the marginal value of sexual preference testimony and its potential to distract the jury from the legitimate issues in the case, we think that the court's plan was a wise and proper exercise of its authority." *United States v. Boylan*, 898 F.2d 230 (1st Cir.1990) (note omitted).

more prejudicial than probative. *Michigan v. Lucas,* —— U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). Clearly, where the public nature of criminal trials and confrontation of adverse witnesses is so important that it must be legislatively modified, courts must act with great restraint.

### Conclusion

 In this case, the two potential witnesses are very differently situated. The government and the defendant have agreed to allow J.Y. to continue to use initials as a way of protecting his identity. Where the defendant waives his right to object to a witness' use of a pseudonym, the court has no reason to insist that the identity of the witness be revealed. *See United States v. Doe,* 655 F.2d at 922 n. 1. Therefore, we are only confronted with the issue of the government's motion to protect P.C.'s identity. In a situation where the witness is voluntarily before the court, that witness' claim to privacy should be given less weight. Unlike a witness who has been subpoenaed, P.C. must have weighed the negative aspects of appearing publicly in a trial of this nature against his desire to see the defendant prosecuted. The court feels that given the lack of precedent favoring the protection of the identity of adult witnesses, together with the position of P.C. before the court, there is no reason to protect P.C.'s identity that even begins to outweigh the defendant's legitimate and constitutionally protected interest in confrontation of witnesses against him. Therefore, the court denies the government's motion to protect P.C.'s identity, and as stipulated by both parties, J.Y. will be identified by these identifying initials.

IT IS SO ORDERED.